UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:    9/9/14
```

NAPOLEON VARGAS,

               Plaintiff,

     - against -

RELIANT REALTY AND AHMED
TAYLOR,

           Defendants.

**MEMORANDUM
OPINION & ORDER**

13 Civ. 2341 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Pro se plaintiff Napoleon Vargas brings this action against Defendants Reliant Realty ("Reliant") and Ahmed Taylor alleging that he was discriminated against on the basis of national origin in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297, and on the basis of a disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-17. (Cmplt. (Dkt. No. 2) at 1; Am. Cmplt. (Dkt. No. 9) at 1)[1] Vargas also claims that his employment was terminated in retaliation for his complaints about unlawful discrimination, in violation of the NYSHRL. (Am. Cmplt. (Dkt. No. 9) at 5, 10-11)

       Defendants have moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 22) For the reasons stated below, this action will be dismissed with leave to amend.

---

[1] The page numbers of the Complaint and Amended Complaint referenced in this Order correspond to the page numbers designated by the ECF system.

## BACKGROUND[2]

Reliant manages apartment buildings.  (See Cmplt. (Dkt. No. 2) at 5; Taylor Aff.

(Dkt. No. 23), Ex. A at Verified Complaint ¶¶ 2-3)  Vargas began working for

Reliant on a part-time basis in April 2010.  (Cmplt. (Dkt. No. 2) at 5)  In

November 2010, Vargas was hired on a full-time basis as a porter and assigned to work at Plaza

Residential, in Brooklyn.  (Id.; Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 2)

After two months at that location, Vargas's supervisor, Defendant Ahmed Taylor,

---

[2]  The following facts are drawn from the Complaint, Amended Complaint, Vargas's opposition
to Defendants' motion to dismiss, Vargas's May 15, 2012 New York State Division of Human
Rights ("NYSDHR" or the "Division") complaint, the NYSDHR's decision dismissing the May
2012 complaint, Vargas's May 16, 2013 NYSDHR complaint, and the Division's decision
dismissing the May 2013 complaint.  (See Nov. 4, 2013 Taylor Aff. (Dkt. No. 23), Exs. A-C;
Dec. 18, 2013 Weinberger Aff. (Dkt. No. 26), Ex. A)  "In assessing the legal sufficiency of [a
plaintiff's] claim[s] [on a motion to dismiss], [the court] must accept factual allegations in the
complaint as true and draw all reasonable inferences in favor of the nonmoving party."  Bldg.
Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (citing
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)).  The court may
"consider . . . the complaint and any documents attached thereto or incorporated by reference and
'documents upon which the complaint "relies heavily."'"  Id. (quoting In re Citigroup ERISA
Litig., 662 F.3d 128, 135 (2d Cir. 2011) (quoting DiFolco, 622 F.3d at 111)).  "Moreover,
allegations made in a pro se plaintiff's [opposition to a motion to dismiss], where they are
consistent with those in the complaint, may also be considered on a motion to dismiss."  Braxton
v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (citing
Coakley v. 42nd Pct. Case 458, No. 08 Civ. 6202 (JSR), 2009 WL 3095529, at *3 (S.D.N.Y.
Sept. 28, 2009); Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990),
abrogated on other grounds by Sosa v. Alvarez-Machain, 542 U.S. 692 (2004)).

Here, Vargas states that he received a Notice of Right to Sue letter from the EEOC on January
10, 2013, and he attaches a copy of that notice to his pleadings.  (Am. Cmplt. (Dkt. No. 9) at 9,
13)  The EEOC Right to Sue letter states that the EEOC closed its file on the case because "[t]he
EEOC has adopted the findings of the state or local fair employment practices agency that
investigated this charge."  (Id. at 13)  Accordingly, this Court will consider Vargas's NYSDHR
complaint – and the Division's decision dismissing that complaint – as "'documents incorporated
in [Vargas's complaints] by reference.'"  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62
F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d
Cir. 1991)).

told Vargas that if he wished to continue working at Plaza Residential, he should join the union.

(Cmplt. (Dkt. No. 2) at 5)  Vargas then became a member of the Service Employees International

Union, Local 32BJ (the "Union").  (See id. at 5, 20)

On February 9, 2011, Vargas filed a grievance with the Union regarding

additional pay that he believed Reliant owed him for working on holidays.  (Id. at 5)  On or

about March 10, 2011, Defendant Taylor told Vargas that he would be reassigned to work at 350

Ann Street in the Bronx, and would be replaced at Plaza Residential by Ricardo Cale.[3]  (Id.;

Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 3)  Vargas was told that he was being

transferred because he was a temporary worker, even though the Union contract states that after

three months of full-time employment a worker is considered a permanent employee.  (Cmplt.

(Dkt. No. 2) at 6)  Vargas then filed another grievance with the Union regarding the change in

his worksite and the holiday pay that Reliant still owed him.  (Taylor Aff. (Dkt. No. 23), Ex. A at

Verified Complaint ¶ 4)

---

Moreover, "a court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. New York Botanical Garden, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (holding that plaintiff's NYSDHR complaint and the NYSDHR's decision "constitute the public records of an administrative body, of which this Court may take judicial notice without converting the [Rule 12(b)(6)] motion into one for summary judgment"). "[I]n deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims." Reyes v. Fairfield Properties, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009). Accordingly, this Court will also take judicial notice of Vargas's May 2013 NYSDHR complaint and the Division's decision dismissing that complaint.

[3] In Vargas's May 2012 NYSDHR complaint, he states that his grievance concerning the holiday pay and the work site change was filed with the Union on March 9, 2011. Vargas also states that Taylor informed him of the work site change on March 9, 2011. Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶¶ 3-4)

In his complaints in the instant action, Plaintiff does not allege Cale's nationality.

As a result of the transfer to the Bronx building, Vargas incurred greater commuting costs each day.  (See Cmplt. (Dkt. No. 2) at 6)  He was also required to wake up earlier – at 5:00 a.m. – and did not arrive home until approximately 7:00 p.m. each day.  (Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 7)  When Vargas complained to Defendant Taylor, Taylor responded that he did not care and would not change Vargas's building assignment.  (Id., Ex. A at Verified Complaint ¶ 5)

After the transfer to the Bronx, Reliant reduced Vargas's hours, harassed him, and forced him to work holidays, in violation of the Union contract.  (See Cmplt. (Dkt. No. 2) at 6)  Vargas was also required to perform tasks that are not part of his job responsibilities, including landscaping and buffing floors.  (Id.; Pltf. Opp. (Dkt. No. 25) at 2)

The transfer to the Bronx also negatively affected Vargas's wages.  Under the Union contract, Vargas was entitled to $15.00 per hour for work at Plaza Residential, because he had worked full-time for four months at that building.  (Cmplt. (Dkt. No. 2) at 6; Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 6)  At the Bronx site, Vargas was paid only $10.50 per hour.[4]  (Cmplt. (Dkt. No. 2) at 6; Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 6)  Moreover, in December 2011, all of Vargas's co-workers received a Christmas bonus, but he did not.  (Cmplt. (Dkt. No. 2) at 6)  In December 2012, Vargas received a $100 Christmas bonus, while his co-workers were each paid $400.[5]  (Id.)

On May 15, 2012, Vargas filed a complaint against Reliant with the NYSDHR, alleging that he had been "discriminated against because [he is] Hispanic, of Dominican national

---

[4]  Vargas's NYSDHR complaint states that – at some point in time – he earned $11.37 per hour while working at the Bronx location.  (Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 6)

[5]  Vargas does not allege the race and national origin of his co-workers.

4

origin and . . . [because he] filed a complaint with [his] Union [against his employer, the

Respondent]." (Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint ¶ 9)

During the NYSDHR investigation of Vargas's claims, he told the Division that

Reliant had transferred him to another work site with a lower hourly salary, and that Reliant had

taken these steps because he is Dominican and Hispanic. Vargas also claimed that Reliant had

retaliated against him after he complained about the transfer and his pay. (Id., Ex. B at

NYSDHR Determination at 1) Vargas also told the NYSDHR, however, that Reliant "treated

almost all employees badly," and the Division concluded that "even if it were true that [Reliant]

treated [Vargas] poorly, it was not the case that the poor treatment applied only to those who

were Dominican or Hispanic." (Id. at 1-2)

Reliant told NYSDHR investigators that it had transferred Vargas based on its

business needs and that, as a result of the grievance Vargas had filed with the Union, Reliant had

paid "all the money that he had been owed." (Id. at 1)

The Division's investigation revealed that, at the Plaza Residential site, Reliant

"employed persons of many national origins and races," including Dominicans, other Hispanics,

and African-Americans. The Division found no evidence that other Dominicans working at

Plaza Residential had been transferred or underpaid. (Id. at 2) The Division also found no

evidence of discriminatory animus directed at Dominicans or other Hispanics. (Id.)

The NYSDHR concluded that "[t]here [is] insufficient evidence that Respondent

discriminated against Complainant based on his race or national origin or that Respondent

retaliated against him as defined in the Human Rights Law." (Id.) Accordingly, in a September

27, 2012 decision, the NYSDHR dismissed Vargas's complaint, finding that there is "no

probable cause to believe that the respondent has engaged in or is engaging in the unlawful

discriminatory practice complained of." (Id. at 1 (emphasis omitted))

Vargas's NYSDHR complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (See id. at 2)  On January 10, 2013, the EEOC adopted the findings of the NYSDHR, closed its file on Vargas's charge, and issued a Notice of Right to Sue letter. (See Cmplt. (Dkt. No. 2) at 8)

Vargas commenced the instant action on April 3, 2013, claiming that Reliant discriminated against him on the basis of his national origin by failing to promote him and by subjecting him to unequal terms and conditions of employment. (Id. at 2-3)

On May 16, 2013, Vargas filed a second complaint against Reliant with the NYSDHR. In this complaint, Vargas alleges that he was injured at work as a result of Reliant's negligence. (Taylor Aff. (Dkt. No. 23), Ex. C at 29)[6] Vargas states that the injury required him to miss work, but that he later obtained a letter from his doctor stating that he could return to work. According to Vargas, Reliant refused to accept the letter and terminated Vargas's employment on April 25, 2013. (Id.) In this second NYSDHR complaint, Vargas contends that he was terminated both because of a disability and in retaliation for his earlier complaints of discrimination against Taylor. (Id. at 28-29)

On May 29, 2013, Vargas filed an Amended Complaint in this action, naming both Reliant and Taylor as defendants. (Am. Cmplt. (Dkt. No. 9)) The Amended Complaint does not amend the original complaint, but instead presents a new cause of action under the ADA alleging that Reliant and Taylor terminated his employment on April 25, 2013, because of

---

[6] The page numbers to Exhibit C to the Taylor Affidavit referenced in this Order correspond to the page numbers designated by the ECF system.

his disability.[7]  (Id. at 2, 5)  In the Amended Complaint, Vargas states that he has not received a Right to Sue letter from the EEOC.  (Id. at 4)

On November 4, 2013, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 22)  Vargas filed an opposition on November 15, 2013 (Dkt. No. 25), and Defendants filed a reply on December 20, 2013.  (Dkt. No. 27)

On November 12, 2013, the NYSDHR issued a decision dismissing Vargas's second NYSDHR complaint, finding that "there is no probable cause to believe that [Reliant] has engaged in or is engaging in the unlawful discriminatory practices complained of."  (Dec. 18, 2013 Weinberger Decl. (Dkt. No. 26), Ex. A ("NYSDHR Nov. 12, 2013 Determination"))  The NYSDHR's investigation "revealed insufficient evidence that [Vargas] was terminated due to his disability and retaliated against because he filed a prior discrimination complaint against [Reliant]."  (Id. at 1)  As to the disability claim, the Division determined that Vargas was terminated after 91 days on leave, and twelve days before he produced a doctor's note clearing him to return to work.  (Id. at 1-2)  The Division concluded that Reliant "had a legitimate business need to fill [Vargas's] position when it terminated him," and that – at the time of termination – neither Vargas nor Reliant knew when he would be able to return to work.  (Id. at 2)  As to the retaliation claim, the Division found that given the length of time between (1) Vargas's complaints about Taylor and his May 15, 2012 NYSDHR complaint against Reliant; and (2) Vargas's termination on April 25, 2013, no inference of retaliatory animus could be

_____

[7] In his opposition to Defendants' motion to dismiss, Vargas states that he suffered an injury to his shoulder "that was cause[d] by [the Defendants'] negligence."  Vargas claims that he had warned Defendants that "the garbage compactor was failing and they did not send the crew to repair [it]."  (Pltf. Opp. (Dkt. No. 25) at 2)

drawn.  (Id. at 2)

## DISCUSSION

### I.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v.

Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Moreover, "a plaintiff alleging employment discrimination or retaliation is not

required to plead facts sufficient to establish a prima facie case."  Krasner v. HSH Nordbank AG,

680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506,

508, 515 (2002) (addressing motion to dismiss standard for Title VII discrimination claim);

Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) (per curiam) (finding

Swierkiewicz holding equally applicable to retaliation claims)).  Instead, as the Swierkiewicz

court explained, the "ordinary rules for assessing the sufficiency of a complaint" under Fed. R.

Civ. P. 8(a)'s notice pleading standard apply.  Swierkiewicz, 534 U.S. at 511.

Under this standard, a plaintiff is required only to set forth a "short and plain

statement of the claim," Fed. R. Civ. Pro. 8(a), with sufficient factual "heft 'to sho[w] that the

pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).  To

survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of

relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id. at 570.

Because Vargas is proceeding pro se, this Court is required to read his complaints liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, this Court will construe Vargas's complaints "'to raise the strongest arguments that [they] suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)).

## II.   POSSIBLE TITLE VII CLAIMS

Both the Complaint and Amended Complaint are form complaints commonly used by pro se litigants pursuing claims for employment discrimination. (See Cmplt. (Dkt. No. 2); Am. Cmplt. (Dkt. No. 9)) The form for an employment discrimination complaint filed in this District lists a variety of statutes, including Title VII, the Age Discrimination in Employment Act

9

of 1967, the ADA, the NYSHRL, and the New York City Human Rights Law.  The form provides a description of the types of claims that may be brought under each statute, alerts the pro se plaintiff of his or her obligation to obtain a Right to Sue letter from the EEOC for purposes of Title VII and ADA claims, and asks the plaintiff to "check only those [statutes] that apply" to the plaintiff's case.  (See Cmplt. (Dkt. No. 2); Am. Cmplt. (Dkt. No. 9))  In the Complaint, Vargas checked off only the NYSHRL; in the Amended Complaint, Vargas checked off only the ADA.  (Cmplt. (Dkt. No. 2); Am. Cmplt. (Dkt. No. 9))

In their moving brief, Defendants repeatedly point out that Vargas has not made any claim under Title VII.  (Def. Br. (Dkt. No. 24) at 1, 7)  In his opposition, Vargas does not dispute this assertion.  (Pltf. Opp. (Dkt. No. 25))

While, under these circumstances, it appears that Vargas did not intend to bring a Title VII claim, this Court is mindful of higher courts' instructions that a pro se complaint must be read liberally, see Erickson, 551 U.S. at 94, and must be construed "'to raise the strongest arguments that [it] suggest[s].'"  Fulton, 591 F.3d at 43 (quoting Green, 260 F.3d at 83).  Accordingly, the Court considers below whether – if the Complaint or Amended Complaint were construed to assert a claim under Title VII – such a claim would survive Defendants' motion to dismiss.

### A.    Discrimination Claim under Title VII

To prevail "[i]n an employment discrimination case [under Title VII], a plaintiff . . . [must] prove . . . (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination."  Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).  "To state a claim for discrimination under Title VII based on either race or

national origin, the plaintiff must allege sufficient facts to state a plausible claim that h[is] employer took an adverse action against h[im] because of h[is] race or national origin." Morales v. City of New York Dep't of Juvenile Justice, No. 10 Civ. 829 (JGK), 2012 WL 180879, at *6 (S.D.N.Y. Jan. 23, 2012) (emphasis added).

        Here, although Vargas states that he is Dominican, he has pled no facts suggesting that he was discriminated against because of his national origin. See Shehabeldin v. GSI, No. 11-CV-5853 (CBA), 2011 WL 6761070, at *2 (E.D.N.Y. Dec. 23, 2011) ("Plaintiff's EEOC intake form does list her national origin as 'Egyptian Arabic,' but nothing suggests that she was discriminated against on that basis. The complaint is therefore dismissed without prejudice for failure to state a claim."). Vargas has not offered any evidence of statements suggesting discriminatory animus toward Dominicans, nor has he pleaded facts suggesting that non-Dominican employees received better treatment than he or other Dominican employees received. Indeed, in his complaints, Vargas does not address in any fashion the national origins of his co-workers or those who supervised him. Conclusory assertions of discrimination are not sufficient to defeat a motion to dismiss; Plaintiff must plead facts suggesting that he was discriminated against because of his national origin. See Ramos v. N.Y.C. Dep't of Corr., No. 05-CV-223 (JFB) (LB), 2006 WL 1120631, at *7 (E.D.N.Y. Apr. 26, 2006) (dismissing Title VII claim because "[n]otwithstanding the liberal pleading standard in Title VII cases (especially for pro se litigants), the complaint as written does not describe any factual allegations to support the vague and conclusory assertion that the treatment he received by [his former employer] was a result of his race").

        Because Vargas has not offered any facts that support an inference of discrimination on the basis of his national origin, any discrimination claim he may have brought

under Title VII must be dismissed for failure to state a claim.

### B.      Retaliation Claim under Title VII

Title VII makes it unlawful for an employer

to discriminate against any individual . . . because he has opposed any practice
made an unlawful employment practice by this subchapter, or because he has
made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a).

To prevail on a Title VII retaliation claim, Plaintiff must show "'(1) participation
in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse
employment action; and (4) a causal connection between the protected activity and the adverse
employment action.'" Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)
(quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).

To the extent that Vargas's complaints could be construed to assert that he was
subjected to retaliation (1) after he filed a grievance with the Union on February 9, 2011,
regarding holiday pay (See Cmplt. (Dkt. No. 2) at 5-6); and (2) after he complained to the
NYSDHR, the EEOC, and this Court that he had been discriminated against on the basis of his
national origin (see Am. Cmplt. (Dkt. No. 9) at 5), neither allegation states a claim for retaliation
under Title VII.

Vargas's February 9, 2011 complaint to the Union about unpaid holiday pay is not
"protected activity" under Title VII. "[C]omplaints centered on general allegations of
harassment [or other mistreatment] unrelated to race [or national origin] . . . are not protected
activity under Title VII." Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006),
aff'd, 629 F.3d 276 (2d Cir. 2010). The statute "requires that the plaintiff has taken, or
threatened to take, some action to protest or oppose illegal discrimination [as defined under Title

VII]." Correa v. Mana Prods., Inc., 550 F. Supp. 2d 319, 327 (E.D.N.Y. 2008). Because Vargas

has not pleaded any facts suggesting that he was opposing any practice made unlawful by Title

VII when he filed a grievance with the Union about the unpaid holiday wages, he has not

demonstrated that he was engaged in "protected activity." See Ruhling v. Tribune Co., No. CV

04-2430 (ARL), 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (concluding that plaintiff had

not engaged in protected activity when she filed an internal complaint that her supervisor favored

those employees who were loyal to him). Accordingly, even if Vargas was transferred to the

Bronx in retaliation for filing a grievance with the Union concerning holiday pay, these facts are

not sufficient to state a claim for retaliation under Title VII.

    In the Amended Complaint, Vargas asserts that he was "retaliated [against] due to

the complaint [he] made against [Defendant Taylor]." (Am. Cmplt. (Dkt. No. 9) at 5) Vargas

goes on to explain that Taylor "did not allow[ ] me to get into the build[ing] when other fired

employees are allow[ed] [to do so] without a problem."[8] (Id.)

    Even if these allegations are construed to assert a claim for retaliation under Title

VII, any such claim must be dismissed, because Vargas has not exhausted his administration

remedies. "Under Title VII . . . , a claimant may bring suit in federal court only if [he] has filed a

timely complaint with the EEOC and obtained a right-to-sue letter." Legnani v. Alitalia Linee

Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001); see also Deravin v. Kerik, 335 F.3d 195,

200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must

first pursue available administrative remedies and file a timely complaint with the EEOC.").

---

[8] The Amended Complaint asserts that Vargas's employment was terminated because of a
disability. (Am. Cmplt., Dkt. No. 9) at 1-2, 5) Vargas did not check off the line for retaliation in
the form complaint's list of "discriminatory conduct of which [the plaintiff] complain[s]." (Id. at
2-3). It is thus not clear from the Amended Complaint whether Vargas is asserting that his
employment was terminated in retaliation for his earlier complaints against Taylor.

Any retaliation claim was raised for the first time in the Amended Complaint filed on May 30, 2013.  (See Am. Cmplt. (Dkt. No. 9) at 5)  Vargas acknowledges in the Amended Complaint that the EEOC has not issued a Right to Sue letter as to this claim.  (Id. at 4) Accordingly, any retaliation claim brought under Title VII must be dismissed.

## III.   NYSHRL CLAIMS

### A.   Discrimination Claim under the NYSHRL

Vargas claims that Defendants discriminated against him on the basis of his national origin in violation of the NYSHRL.  (Cmplt. (Dkt. No. 2) at 1-3)  "[A] plaintiff establishes a prima facie case of discrimination [under the NYSHRL] by showing that:  (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010).

The NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person has filed a complaint hereunder or with any local commission on human rights. . . ."  N.Y. Exec. Law § 297(9) (emphasis added).  Accordingly, the NYSHRL "provides for two alternative fora for litigating discrimination claims under that statute." Mendez v. City of New York Human Res. Admin., No. 04 Civ. 0559 (RWS), 2005 WL 2739276, at *2 (S.D.N.Y. Oct. 24, 2005).  "The individual may either press the NYSHRL claim in an administrative forum or the individual may elect to proceed to court."  Id. (emphasis added). "This election of remedies precludes the individual from proceeding in both fora."  Id.  As a general rule, "the NYSHRL . . . require[s] dismissal of a suit in court if the complainant lodges a

complaint with . . . the [NYSDHR]." Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).

There are three exceptions to this rule, however. A plaintiff may pursue a court action under the NYSHRL "where the [NYSDHR] has dismissed such complaint [1] on the grounds of administrative convenience, [2] on the grounds of untimeliness, or [3] on the grounds that the election of remedies is annulled." N.Y. Exec. Law § 297(9). "Unless the claims are dismissed by the NYSDHR for one of the enumerated procedural reasons, the election of remedies provision under the NYSHRL poses an 'insuperable jurisdiction bar' to subsequently raising those same claims in federal court." McDonald v. City of New York, 786 F. Supp. 2d 588, 615 (E.D.N.Y. 2011) (quoting Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882-84 (2d Cir. 2000)).

Here, Vargas's NYSHRL discrimination claim is based on the same facts set forth in his NYSDHR complaint. (Compare Cmplt. (Dkt. No. 2), with Taylor Aff. (Dkt. No. 23), Ex. A at Verified Complaint) Moreover, the NYSDHR dismissed Vargas's complaint because he had not proffered sufficient evidence of discrimination or retaliation under the NYSHRL. (Taylor Aff. (Dkt. No. 23), Ex. B at NYSDHR Determination at 2) Accordingly, none of the exceptions to the NYSHRL's election of remedies provision applies. Having filed a complaint with the NYSDHR alleging discrimination in violation of the NYSHRL, Vargas is now precluded from pursuing the same claim before this Court. See Mendez, 2005 WL2739276, at *2 (dismissing "all of the NYSHRL claims in the case at bar" where plaintiff "interposed the very same claims that he put forward in the NYSHRL charges" that were "dismissed by a 'no

probable cause' determination of the SDHR").[9]

### B.    Retaliation Claim under the NYSHRL

To the extent that the Amended Complaint asserts a claim for retaliatory

termination under the NYSHRL (see Am. Cmplt. (Dkt. No. 9) at 5), any such claim is likewise

procedurally barred.  On May 16, 2013, Vargas filed a verified complaint against Reliant with

the NYSDHR, alleging that he was terminated in "retaliation [for] [a] complaint [he] made . . . of

discrimination . . . against [him]."  (Taylor Aff. (Dkt. No. 23), Ex. C at 29)  In this second

NYSDHR complaint, Vargas states that he "was fired from work for retaliation complaints [he]

made [about] the abuses of power committed against [him] by the Vice President Ahmed

Taylor."  (Id.)  To the extent that the Amended Complaint contains a retaliation claim, it is

identical to the retaliation claim Vargas raises in this second NYSDHR complaint.  Moreover, on

November 12, 2013, the NYSDHR dismissed Vargas's second complaint, finding that there is

"no probable cause to believe that respondent has engaged in or is engaging in the unlawful

discriminatory practice complained of."  (Dec. 18, 2013 Weinberger Aff. (Dkt. No. 26), Ex. A)

(emphasis omitted).  Vargas's second NYSDHR complaint was thus not dismissed for any

---

[9] The fact that Taylor is not named as a respondent in Vargas's NYSDHR complaint does not
alter the analysis, because the claims underlying the NYSDHR complaint are identical to those
raised in the instant action.  See Benson v. N. Shore-Long Island Jewish Health Sys., 482 F.
Supp. 2d 320, 326 (E.D.N.Y. 2007) ("[T]he parties fail to address the fact that [four of the
defendants] were not named as respondents in the Plaintiff's administrative charge.  Even
considering this fact, the Court still lacks jurisdiction.  The Plaintiff's present claims are based on
the same facts and incidents raised in the charge and even though the complaint names additional
parties, because the incidents are identical, this Court lacks jurisdiction over the Plaintiff's
NYSHRL claims against all the Defendants."); Brown v. Wright, 226 A.D.2d 570, 571 (2d Dep't
1996) ("[S]ince the [New York] Supreme Court was deprived of its subject matter jurisdiction to
consider the plaintiff's cause of action [under the NYSHRL] when the plaintiff commenced the
administrative action against the corporate defendant, the plaintiff could not commence an action
in the court, arising out of the same facts, against an additional defendant who was not named in
the administrative complaint.").

reason that would trigger an exception to the NYSHRL's election of remedies requirement.

Accordingly, Vargas's NYSHRL retaliation claim is barred as well.

## IV.    THE ADA CLAIM MUST BE DISMISSED FOR
## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

"[U]nder the ADA, as under Title VII, a plaintiff must file a charge of

discrimination with the EEOC prior to commencing an action for employment discrimination in

federal court." Sotolongo v. N.Y.C. Transit Auth., 63 F. Supp. 2d 353, 360 (S.D.N.Y. 1999).

"Before filing a civil action in federal court seeking relief under the ADA, a plaintiff must

exhaust his administrative remedies by timely filing a charge of discrimination with the [EEOC]

and receiving a right-to-sue letter from the EEOC." Sommer v. Wood Dinning Servs., No. 02-

CV-4967 (FB), 2002 WL 31495969, at *1 (E.D.N.Y. Nov. 5, 2002).

Here, Vargas concedes that he did not receive a Right to Sue letter prior to

asserting his ADA claim in the Amended Complaint. (Am. Cmplt. (Dkt. No. 9) at 4) Because

Vargas has not exhausted his administrative remedies with respect to his ADA claim, this claim

will be dismissed.[10]

---

[10] Because of Vargas's failure to exhaust his administrative remedies, it is not necessary to reach
the merits of his ADA claim. (See Def. Br. (Dkt. No. 24) at 12-13) It is worth noting, however,
that it is questionable whether Vargas has adequately pled an ADA claim. "The prima facie
elements of an ADA claim are: (1) plaintiff's employer is subject to the ADA; (2) plaintiff was
disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the
essential functions of h[is] job, with or without reasonable accommodation; and (4) plaintiff
suffered [an] adverse employment action because of h[is] disability." Jacques v. DiMarzio, Inc.,
386 F.3d 192, 198 (2d Cir. 2004) (second alteration in original). "People with disabilities[ ] [are]
defined as individuals with 'a physical or mental impairment that substantially limits one or more
of the major life activities of such individual.'" Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 104
(2d Cir. 2003) (quoting 42 U.S.C. § 12102(1)(A)). Here, Vargas has alleged no facts regarding
the nature or extent of his claimed disability, how that disability affected his daily life and ability
to do his job, and whether any accommodation was offered to him, or could have been offered to
him, that would have made it possible for him to do his job.

## V.     TITLE VII AND ADA CLAIMS AGAINST DEFENDANT TAYLOR

To the extent that Plaintiff asserts Title VII and ADA claims against Taylor, those

claims are also barred as a matter of law.  "Title VII and the ADA do not impose liability on

individuals." Williams-Velasquez v. Guardian Life Ins. Co., No. 99 Civ. 738 (LTS) (JCF), 2003

WL 22038567, at *8 (S.D.N.Y. Aug. 29, 2003); see also Garibaldi v. Anixter, Inc., 407 F. Supp.

2d 449, 451 (W.D.N.Y. 2006) (citing Bliss v. Rochester City Sch. Dist., 196 F. Supp. 2d 314,

339 (W.D.N.Y. 2002)) ("[T]here is no individual liability under any of the federal anti-

discrimination statutes, including Title VII[ and] the ADA." (emphasis in original)).  Even

"individual defendants with supervisory control over a plaintiff may not be held personally liable

under Title VII." Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995); see also

Shehabeldin, 2011 WL 6761070, at *2 n.1 ("Even if plaintiff's complaint did state a Title VII

claim against GSI, she could not sustain a claim against the individual defendants.  It is well-

settled that 'individuals are not subject to liability under Title VII.'" (quoting Wrighten v.

Glowski, 232 F.3d 119, 120 (2d Cir. 2000))); Holmes v. Long Island R.R., No. 96 CV 6196

(NG), 1998 WL 960299, at *3 (E.D.N.Y. Dec. 10, 1998) ("Individual defendants – even those

with supervisory control – may not be held personally liable for alleged violations of Title VII.").

"[T]he ADA, like Title VII, does not provide for liability by individual employees." Yaba v.

Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996).  "Furthermore, Title

VII and the ADA do not provide for suits against individuals in their official capacity where, as

here, the employer entity can be named as a defendant." Williams-Velasquez., 2003 WL

22038567, at *8.

"Because the Court of Appeals['s] analysis [in Tomka] clearly precludes

individual liability under the ADA or Title VII, plaintiff fails to state a claim against individual

defendant[ ] [Taylor]." Cerrato v. Durham, 941 F. Supp. 388, 395 (S.D.N.Y. 1996).

Accordingly, Plaintiff's Title VII and ADA claims against Taylor will be dismissed.

## VI.   LEAVE TO AMEND

Although Vargas has not requested leave to re-plead, the Court has considered

whether he should be given an opportunity to do so. The Second Circuit has instructed that

courts "should not dismiss [a pro se complaint] without granting leave to amend at least once

when a liberal reading of the complaint gives any indication that a valid claim might be stated."

Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation

omitted). A court may, of course, decline to grant leave to re-plead "when amendment would be

futile." Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006) (citing Ellis v. Chao, 336

F.3d 114, 127 (2d Cir. 2003)).

Although Vargas – to date – has not pleaded any facts suggesting that he was the

victim of discrimination under Title VII, this Court will grant Vargas leave to amend to add such

a claim. See Marcelle v. Venture Servs. Corp., No. 90 Civ. 6385 (MGC), 1991 WL 95343, at *2

(S.D.N.Y. May 30, 1991) (granting pro se plaintiff "leave to amend the complaint within 30 days

if he can allege facts that show that defendant discharged him because of his race or national

origin" where plaintiff's complaint "allege[d] no facts that show that race or national origin

affected the conditions of his employment or the decision to terminate him").

Leave to amend will not be granted as to Vargas's Title VII and ADA claims

against Taylor, Plaintiff's NYSHRL claims, and any retaliation claim relating to Vargas's union

grievance for holiday pay, because any amendment as to these claims would be futile; the defects

in those claims are not the result of "inadequate[ ] or inartful[ ]" pleading, and are not susceptible

to cure. See Cuoco, 222 F.3d at 112.

19

As stated above, Vargas may not pursue any Title VII retaliatory termination claim or his ADA claim until he has exhausted his administrative remedies for these claims.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted.  Plaintiff is granted leave to amend to add a Title VII discrimination claim against Reliant.  Any Second Amended Complaint must be filed within 30 days of this Order.  All of Plaintiff's remaining claims are dismissed without leave to amend.  The Clerk of the Court is respectfully directed to terminate the motion (Dkt. No. 22) and to terminate Defendant Ahmed Taylor.  The Clerk is further directed to mail a copy of this order by certified mail to pro se plaintiff Napoleon Vargas, 519 Jefferson Ave., Rockville Center, New York 11570.

Dated: New York, New York
　　　　September 9, 2014　　　　　　　　SO ORDERED.

Paul G. Gardephe
United States District Judge

20